DIAZ, Circuit Judge:
 

 Carlton & Harris Chiropractic, Inc. appeals from the district court's dismissal of its claim against PDR Network, LLC, PDR Distribution, LLC, PDR Equity, LLC, and John Does 1-10 (collectively, "PDR Network") for sending an unsolicited advertisement by fax in violation of the
 Telephone Consumer Protection Act (the "TCPA"),
 
 47 U.S.C. § 227
 
 . Carlton & Harris argues that the district court erred in declining to defer to a 2006 Rule promulgated by the Federal Communications Commission (the "FCC") interpreting certain provisions of the TCPA. Specifically, Carlton & Harris contends that the Hobbs Act,
 
 28 U.S.C. § 2342
 

 et seq.
 
 , required the district court to defer to the FCC's interpretation of the term "unsolicited advertisement." Additionally, to the extent that the district court interpreted the meaning of the 2006 FCC Rule, Carlton & Harris argues that the district court erred by reading the rule to require that a fax have some commercial aim to be considered an advertisement.
 

 Because the Hobbs Act deprives district courts of jurisdiction to consider the validity of orders like the 2006 FCC Rule, and because the district court's reading of the 2006 FCC Rule is at odds with the plain meaning of its text, we vacate the district court's judgment.
 

 I.
 

 We review a district court's dismissal under Fed. R. Civ. P. 12(b)(6) de novo, "assuming as true the complaint's factual allegations and construing all reasonable inferences in favor of the plaintiff."
 
 Semenova v. Md. Transit Admin.
 
 ,
 
 845 F.3d 564
 
 , 567 (4th Cir. 2017) (internal quotation marks omitted).
 

 A.
 

 Carlton & Harris maintains a chiropractic office in West Virginia. PDR Network is a company that "delivers health knowledge products and services" to healthcare providers. J.A. 33. Among other things, PDR Network publishes the
 
 Physicians' Desk Reference
 
 , a widely-used compendium of prescribing information for various prescription drugs. PDR Network is paid by pharmaceutical manufacturers for including their drugs in the
 
 Physicians' Desk Reference
 
 .
 

 On December 17, 2013, PDR Network sent Carlton & Harris a fax. The fax was addressed to "Practice Manager" and its subject line announced: "FREE 2014
 
 Physicians' Desk Reference
 
 eBook-Reserve Now." J.A. 23. The fax invited the recipient to "Reserve Your Free 2014
 
 Physicians' Desk Reference
 
 eBook" by visiting PDR Network's website.
 

 Id.
 

 It included a contact email address and phone number. The fax touted various benefits of the e-book, noting that it contained the "[s]ame trusted, FDA-approved full prescribing information ... [n]ow in a new, convenient digital format" and that the e-book was "[d]eveloped to support your changing digital workflow."
 

 Id.
 

 At the bottom of the fax, a disclaimer provided a phone number the recipient could call to "opt-out of delivery of clinically relevant information about healthcare products and services from PDR via fax."
 

 Id.
 

 Finally, the fax advised that Carlton & Harris had received the offer "because you are a member of the PDR Network."
 

 Id.
 

 B.
 

 Carlton & Harris sued PDR Network in the Southern District of West Virginia, asserting a claim under the TCPA. The TCPA, as amended by the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21,
 
 119 Stat. 359
 
 , generally prohibits the use of a fax machine to send "unsolicited advertisement[s]."
 
 47 U.S.C. § 227
 
 (b)(1)(C). It creates a private cause of action that permits the recipient of an unsolicited fax advertisement to seek damages from the sender and recover actual monetary loss or $500 in statutory damages for each violation.
 
 47 U.S.C. § 227
 
 (b)(3). If a court finds that the sender "willfully or knowingly violated"
 

 the TCPA, damages may be trebled.
 

 Id.
 

 Carlton & Harris seeks to represent a class of similarly situated recipients of unsolicited faxes offering free copies of the
 
 Physicians' Desk Reference
 
 e-book.
 

 PDR Network moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. It argued that the fax offering the free e-book could not be considered an unsolicited advertisement as a matter of law because it did not offer anything for sale. In response, Carlton & Harris pointed to a 2006 FCC Rule interpreting the term "unsolicited advertisement." Pursuant to its statutory authority to "prescribe regulations to implement the requirements" of the TCPA,
 
 see
 

 47 U.S.C. § 227
 
 (b)(2), the FCC promulgated a rule providing that "facsimile messages that promote goods or services even at no cost ... are unsolicited advertisements under the TCPA's definition."
 
 See
 
 Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005,
 
 71 Fed. Reg. 25,967
 
 , 25,973 (May 3, 2006) (the "2006 FCC Rule"). Carlton & Harris argued that the fax it received was an unsolicited advertisement as defined in the 2006 FCC Rule because it promoted a good at no cost. Moreover, Carlton & Harris argued that the district court was obligated to follow the 2006 FCC Rule pursuant to the Hobbs Act.
 

 The district court disagreed. The court held that the Hobbs Act did not compel the court to defer to "the FCC's interpretation of an unambiguous statute."
 
 Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC
 
 , No. 3:15-14887,
 
 2016 WL 5799301
 
 , at *4 (S.D. W. Va. Sept. 30, 2016). The district court considered the TCPA's own definition of "unsolicited advertisement" "clear and easy to apply," and thus held that it was not required to follow the 2006 FCC Rule and "decline[d] to defer" to it.
 

 Id.
 

 (citing
 
 Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.
 
 ,
 
 467 U.S. 837
 
 , 843,
 
 104 S.Ct. 2778
 
 ,
 
 81 L.Ed.2d 694
 
 (1984) ). The district court further held that even under the 2006 FCC Rule, PDR Network's fax was still not an advertisement because the rule requires an advertisement to have a "commercial aim," and no such aim existed here.
 

 Id.
 

 Accordingly, the district court concluded that Carlton & Harris had not stated a valid claim under the TCPA and granted PDR Network's motion to dismiss.
 

 Id.
 

 This appeal followed.
 

 II.
 

 The question presented is whether and when a fax that offers a free good or service constitutes an advertisement under the TCPA. To resolve it, we must answer two more: first, must a district court defer to an FCC interpretation of the TCPA? And if so, what is the meaning of "unsolicited advertisement" under the 2006 FCC Rule? We address these issues in turn.
 

 A.
 

 The TCPA defines "unsolicited advertisement" to include "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."
 
 47 U.S.C. § 227
 
 (a)(5). In a typical case of statutory interpretation where an agency rule is involved, the familiar
 
 Chevron
 
 framework requires a court to first ask whether the underlying statute is ambiguous ("step one").
 
 See
 

 Chevron
 
 ,
 
 467 U.S. at 843
 
 ,
 
 104 S.Ct. 2778
 
 ;
 
 Montgomery Cty., Md. v. F.C.C.
 
 ,
 
 811 F.3d 121
 
 , 129 (4th Cir. 2015). Where a statute's meaning is clear on its face, the inquiry ends and the unambiguous meaning controls.
 
 Chevron
 
 ,
 
 467 U.S. at 842-43
 
 ,
 
 104 S.Ct. 2778
 
 .
 

 In this case, the district court applied step one of
 
 Chevron
 
 to the TCPA's definition and found it to be unambiguous. Thus, it declined to defer to the FCC interpretation. We conclude, however, that the Hobbs Act,
 
 28 U.S.C. § 2341
 

 et seq.
 
 , precluded the district court from even reaching the step-one question.
 

 The Hobbs Act, also known as the Administrative Orders Review Act, provides a mechanism for judicial review of certain administrative orders, including "all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47."
 
 28 U.S.C. § 2342
 
 (1).
 
 [1]
 
 A party aggrieved by such an order may challenge it by filing a petition in the court of appeals for the judicial circuit where the petitioner resides or has its principal office, or in the Court of Appeals for the D.C. Circuit.
 
 28 U.S.C. § 2343
 
 . The Hobbs Act specifically vests the federal courts of appeals with "exclusive jurisdiction" to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" the orders to which it applies, including FCC interpretations of the TCPA.
 
 See
 

 28 U.S.C. § 2342
 
 . "This procedural path created by the command of Congress promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency" charged with overseeing the TCPA.
 
 Mais v. Gulf Coast Collection Bureau, Inc.
 
 ,
 
 768 F.3d 1110
 
 , 1119 (11th Cir. 2014) (internal quotation marks omitted).
 

 The district court erred when it eschewed the Hobbs Act's command in favor of
 
 Chevron
 
 analysis to decide whether to adopt the 2006 FCC Rule. Federal district courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute."
 
 Exxon Mobil Corp. v. Allapattah Servs., Inc.
 
 ,
 
 545 U.S. 546
 
 , 552,
 
 125 S.Ct. 2611
 
 ,
 
 162 L.Ed.2d 502
 
 (2005) (internal quotation marks omitted); U.S. Const. art. III, § 1. Where, as here, Congress has specifically stripped jurisdiction from the district courts regarding a certain issue, those courts lack the power and authority to reach it.
 

 This sort of "jurisdiction-channeling" provision, especially in the context of administrative law, is "nothing unique."
 
 Blitz v. Napolitano
 
 ,
 
 700 F.3d 733
 
 , 742 (4th Cir. 2012) (noting that "agency decisions are commonly subject to such" provisions and that "final agency actions are generally reviewed in the courts of appeals"). When
 
 Chevron
 
 meets Hobbs, consideration of the merits must yield to jurisdictional constraints. "[A]n Article III court's obligation to ensure its jurisdiction to resolve a controversy precedes any analysis of the merits ... [A]rguing that the district court can put off considering its jurisdiction until after step one of
 
 Chevron
 
 ... turns that traditional approach on its head."
 
 CE Design, Ltd. v. Prism Bus. Media, Inc.
 
 ,
 
 606 F.3d 443
 
 , 447-48 (7th Cir. 2010). Indeed, a district court simply cannot reach the
 
 Chevron
 
 question without "rubbing up against the Hobbs Act's jurisdictional bar."
 

 Id.
 

 at 449
 
 . The district court had no power to decide whether the FCC rule was entitled to deference. By refusing to defer to the FCC rule and applying
 
 Chevron
 
 analysis instead, the court acted beyond the scope of its congressionally granted authority.
 

 Every other circuit to consider the issue has reached the same result. In
 
 Mais v. Gulf Coast Collection Bureau, Inc.
 
 , the Eleventh Circuit reversed a district court finding that an FCC interpretation of the TCPA's "prior express consent" exception was inconsistent with the statute.
 
 768 F.3d at 1113
 
 . The court held that because of the Hobbs Act, the district court "lacked the power to consider in any way the validity of the 2008 FCC Ruling."
 

 Id.
 

 The Eighth Circuit, in
 
 Nack v. Walburg
 
 , refused to consider whether an FCC interpretation of the TCPA "properly could have been promulgated" because the Hobbs Act "precludes us from entertaining challenges to the regulation."
 
 715 F.3d 680
 
 , 682 (8th Cir. 2013). And in
 
 Leyse v. Clear Channel Broad., Inc.
 
 , the Sixth Circuit held that the Hobbs Act "deprives the district court below-and this court on appeal-of jurisdiction over the argument that the exemption [to the TCPA] was invalid or should be set aside because of procedural concerns."
 
 545 Fed.Appx. 444
 
 , 459 (6th Cir. 2013) (unpublished) (amending and superseding
 
 Leyse v. Clear Channel Broad. Inc.
 
 ,
 
 697 F.3d 360
 
 (6th Cir. 2012) ).
 

 PDR Network urges us to instead follow the Sixth Circuit's decision in
 
 Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.
 
 , which also considered the meaning of "advertisement" under the TCPA.
 
 788 F.3d 218
 
 (6th Cir. 2015). But although
 
 Sandusky
 
 declined to defer to the 2006 FCC Rule because it found the statutory definition unambiguous, that decision made no mention of the Hobbs Act's jurisdictional bar nor explained how the court overcame it.
 
 See
 

 id.
 

 at 223
 
 . For that reason, we do not find that decision persuasive here.
 

 B.
 

 PDR Network also argues (and our dissenting colleague agrees) that the Hobbs Act should not apply in this case because the district court did not specifically invalidate the 2006 FCC Rule. Instead, PDR Network contends, the court merely chose not to apply it.
 
 See
 

 Carlton & Harris
 
 ,
 
 2016 WL 5799301
 
 , at *3 ("[T]he Court presumes the FCC's order is valid. Nonetheless, the order's validity does not,
 
 ipso facto
 
 , bind the Court to defer to the FCC's interpretation of the TCPA.").
 

 We find this logic unavailing. The Hobbs Act broadly vests federal appellate courts with exclusive jurisdiction to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" orders like the 2006 FCC Rule.
 
 28 U.S.C. § 2342
 
 (1). District courts, by implication, are without jurisdiction to do any of those things. As other courts have recognized, to decide whether the Hobbs Act applies to restrict jurisdiction in a particular case, we look to the "practical effect" of a claim.
 
 See
 

 Mais
 
 ,
 
 768 F.3d at 1120
 
 . It is of no moment whether PDR Network specifically asked the district court to find the rule invalid, or whether the court purported to do so.
 
 See
 

 CE Design
 
 ,
 
 606 F.3d at 448
 
 ("[R]equest[ing] that the court 'ignore' the rule is just another way of asking it
 
 not
 
 to enforce the rule."). Like the Seventh Circuit, we see no difference in "this fine distinction."
 

 Id.
 

 Invalidation by any other name still runs afoul of the Hobbs Act's constraints. To hold that a district court cannot enjoin or set aside a rule but is nevertheless free to ignore it (or "decline[ ] to defer" to it,
 
 Carlton & Harris
 
 ,
 
 2016 WL 5799301
 
 , at *4 ) would allow a party to perform an end run around the administrative process Congress created and instead tackle administrative orders in a district court. Such an approach is contrary to the text of the Hobbs Act, and would undermine Congress's aim of ensuring uniform application of FCC orders. If PDR Network is bent on challenging the validity
 or prudence of the FCC rule, it must do so through the specific administrative procedure that the Hobbs Act provides.
 

 For these reasons, we hold that the jurisdictional command of the Hobbs Act requires a district court to apply FCC interpretations of the TCPA. The district court therefore erred by engaging in
 
 Chevron
 
 analysis and "declin[ing] to defer" to the FCC rule.
 

 C.
 

 Although the Hobbs Act prevents the district court (and this court on appeal) from questioning the validity of the 2006 FCC Rule, the court can, and must, interpret what it says.
 
 See
 

 Cartrette v. Time Warner Cable, Inc.
 
 ,
 
 157 F.Supp.3d 448
 
 , 452-53 (E.D.N.C. 2016) ("[T]he matters of interpreting and applying the FCC's rulings remain within the province of the court."). We therefore consider whether the district court erred in determining that the 2006 FCC Rule requires a fax to have some commercial aim to be considered an "advertisement" for purposes of TCPA liability.
 

 "[O]ur interpretation of regulations begins with their text."
 
 Gilbert v. Residential Funding LLC
 
 ,
 
 678 F.3d 271
 
 , 276 (4th Cir. 2012). The 2006 FCC Rule provides, in pertinent part:
 

 [Facsimile] messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an EBR [established business relationship].
 

 The rule also distinguishes messages promoting free goods or services, which are unsolicited advertisements, from communications "that contain only information, such as industry news articles, legislative updates, or employee benefit information," which are not.
 

 Id.
 

 ;
 
 see also
 

 Sandusky
 
 ,
 
 788 F.3d at 223-24
 
 .
 

 The district court concluded that even under the 2006 FCC Rule, PDR Network's fax was not an advertisement because the rule includes only faxes with a "commercial aim."
 
 Carlton & Harris
 
 ,
 
 2016 WL 5799301
 
 , at *5. The district court attempted to "harmonize[ ] the FCC interpretation with the plain meaning of the TCPA" and concluded that a "blanket ban on any fax that offers a free good or service without any commercial aspect either directly or indirectly obviates the eminently rational purpose to the FCC's guidance and strips essential meaning from the TCPA."
 
 Id.
 
 at *4.
 

 We disagree. There is no need to "harmonize" a rule whose meaning is plain. And the district court's interpretation doesn't follow from the rule's plain text. A close reading of the rule reveals a different result. The first sentence of the relevant portion is clear and unambiguous. Setting aside the list of examples (which, set off by the words "such as," is meant to illustrate rather than exhaust), it reads: "[F]acsimile messages that promote goods or services
 even at no cost ... are unsolicited advertisements under the TCPA's definition." 2006 FCC Rule. The sentences that follow explain the rationale for that straightforward principle. Offers that are purportedly "free" often have commercial strings attached, either as pretext or as part of an overall marketing campaign.
 
 [2]
 
 For this reason, the FCC chose to interpret the term "advertisement" broadly to include any offer of a free good or service.
 

 "The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written."
 
 Gilbert
 
 ,
 
 678 F.3d at 276
 
 (quoting
 
 Textron, Inc. v. Comm'r
 
 ,
 
 336 F.3d 26
 
 , 31 (1st Cir. 2003) ). From a natural reading of the text of the regulation, we get this simple rule: faxes that offer free goods and services are advertisements under the TCPA. We need not "harmonize" the FCC's rule with the underlying statute, or probe the agency's rationale. Because the plain meaning of the regulation is clear, our interpretive task is complete.
 

 Judge Pierre Leval recently reached a similar conclusion in his concurring opinion in
 
 Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.
 
 ,
 
 847 F.3d 92
 
 (2d Cir. 2017). In that case, Boehringer sent an unsolicited fax to physicians inviting them to a free dinner meeting to discuss certain medical disorders.
 

 Id.
 

 at 93
 
 . At the time, Boehringer did not sell any drugs that treated those disorders, but was in the process of developing one and had submitted preliminary documents to the FDA for approval.
 

 Id.
 

 at 94
 
 .
 

 The district court dismissed the case, holding that the fax was not an advertisement as a matter of law.
 
 See
 

 id.
 

 at 93
 
 . While the Second Circuit reversed on the basis of the 2006 FCC Rule, it did so recognizing the difficulty of proving a commercial nexus at the pleading stage, and held that the case should advance to discovery to determine whether the meeting in fact had a commercial purpose.
 
 See
 

 id.
 

 at 96-97
 
 .
 

 But in his concurrence, Judge Leval explained that by reading the 2006 FCC Rule "precisely, sentence by sentence, giving each sentence its natural meaning," a different interpretation emerged requiring no commercial nexus at all.
 
 See
 

 id.
 

 at 100-01
 
 (Leval, J., concurring). Specifically, "[b]ecause of the frequency, observed by the [FCC], that messages offering free goods or services in fact mask or precede efforts to sell something, the Commission has adopted a prophylactic presumption that fax messages offering free goods or services
 
 are
 
 advertisements and thus
 
 are
 
 prohibited by § 277."
 

 Id.
 

 We find Judge Leval's logic persuasive and agree that his is the natural and logical reading of the 2006 FCC Rule.
 
 [3]
 
 The rule may be overinclusive in that (for example) it may bar an organization from faxing offers for truly free goods and services unconnected to any commercial interest, but prophylactic rules are neither uncommon nor unlawful.
 
 See
 

 Friedman v. Heckler
 
 ,
 
 765 F.2d 383
 
 , 388 (2d Cir. 1985) ("Prophylactic rules ... cannot, and need not, operate with mathematical precision ... The mere fact that a regulation operates
 overbroadly does not render it invalid.").
 

 In any event, given the increasing obsolescence of fax machines, we suspect there will be few occasions where this rule serves to block an entity wishing to offer truly free goods or services from doing so.
 
 [4]
 
 And although we do not reach the FCC's intent in enacting the rule, its decision to prohibit all unsolicited offers for free goods or services is (in our view) a reasonable one. A per se rule advances the purpose of the underlying statute by protecting consumers from junk faxes. The rule also helps would-be violators avoid inadvertent liability by eliminating the need for a case-by-case determination of whether a fax is indeed a free offer, or merely a pretext for something more.
 

 The district court expressed concern that this interpretation of the 2006 FCC Rule would undermine the text and purpose of the TCPA, which "seeks to curtail faxes with a commercial nature."
 
 Carlton & Harris
 
 ,
 
 2016 WL 5799301
 
 , at *4. Relying on the meaning of the words "commercial" and "promote," the court reasoned that the rule cannot mean that all faxes offering free goods and services are advertisements, because that would "read 'commercial' out of the TCPA's definition of 'unsolicited advertisement'-a clear abdication of elementary statutory construction."
 

 Id.
 

 The district court is correct that Congress enacted the TCPA to combat an "explosive growth in unsolicited facsimile advertising, or 'junk fax.' "
 
 See
 
 H.R. Rep. 102-317. But requiring a fax to propose a specific commercial transaction on its face takes too narrow a view of the concepts of commercial activity and promotion, and ignores the reality of many modern business models.
 

 This case illustrates why the FCC may have decided to implement so broad a rule. At this point in the litigation, Carlton & Harris has not taken any discovery, and few details of PDR Network's business model have emerged. We do know that PDR Network receives money from pharmaceutical companies whose drugs are listed in the
 
 Physicians' Desk Reference
 
 . And nothing in the record suggests that PDR Network is a charity that distributes free e-books without hope of financial gain. Although PDR Network does not charge healthcare providers money for its e-book, it's certainly plausible that the amount of money it receives turns on how many copies of the
 
 Physicians' Desk Reference
 
 it distributes. The free distribution of the e-book, then, may not impose a financial cost on healthcare providers, but PDR Network may nevertheless stand to profit when a provider accepts a free copy.
 

 Moreover, giving away products in the hope of future financial gain is a commonplace marketing tactic. PDR Network purports to offer other services to healthcare providers, and it may offer the
 
 Physicians' Desk Reference
 
 for free in the hopes of establishing relationships with healthcare providers that will lead to future sales of other goods or services. All told, we think it entirely plausible that PDR Network distributes the free e-books to further its own economic interests.
 

 Our musings aside, the FCC through its Congressional mandate to administer and implement the TCPA has declined to require
 such a fact-based inquiry. PDR Network sent Carlton & Harris a fax that offered a free good, namely, the
 
 Physicians' Desk Reference
 
 e-book.
 
 [5]
 
 Accordingly, the fax was an advertisement under the plain meaning of the 2006 FCC Rule.
 

 III.
 

 To sum up, this case asks us to determine the meaning of the word "advertisement." In doing so, we do not start with a blank slate. Instead, we must follow the guideposts that Congress has set out. The Hobbs Act tells us where to look for an answer: the 2006 FCC Rule. And that rule, in turn, tells us what "advertisement" means.
 

 The Hobbs Act requires a district court to follow FCC interpretations of the TCPA, and under the 2006 FCC Rule, PDR Network's fax offering a free good was indeed an advertisement. PDR Network may think the FCC Rule unwise or unfair, but the district court was "without jurisdiction to consider [its] wisdom and efficacy."
 
 Mais
 
 ,
 
 768 F.3d at 1121
 
 .
 

 For these reasons, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.
 

 VACATED AND REMANDED
 

 47 U.S.C. § 402
 
 (a) sets forth the procedure to "enjoin, set aside, annul, or suspend any order of the Commission under" the Communications Act, which includes the Telephone Consumer Protection Act.
 
 See
 
 Pub. L. No. 102-243, 105 Stat 2394. Neither party has disputed that the 2006 FCC Rule is the sort of "final order" contemplated by the Hobbs Act.
 

 Contrary to our colleague's view, we are not here "attempt[ing] to divine the FCC's intent,"
 
 post
 
 at ---- n.2, but simply paraphrasing the text of the FCC Rule.
 

 Our dissenting colleague suggests that we have omitted something from our analysis of
 
 Boehringer
 
 .
 
 See
 

 po
 

 st
 
 at ---- n.1. But we cite the case only to note our agreement with Judge Leval's reading of the FCC Rule.
 

 In his concurrence in
 
 Boehringer
 
 , Judge Leval addressed the concern that his interpretation of the rule would prevent "charitable, nonprofit entities" from sending offers for free goods or services.
 
 See
 

 847 F.3d at 102-03
 
 (Leval, J., concurring). He noted several reasons why charities or nonprofits might be exempt from liability under the rule. Because there is nothing in the record to suggest PDR Network is such an entity, we need not and do not decide that question here.
 

 The primary cases on which PDR Network relies involve informational faxes rather than offers of free goods or services.
 
 See
 

 Sandusky
 
 ,
 
 788 F.3d at 220
 
 (fax containing formulary information for prescription drugs);
 
 Physicians Healthsource, Inc. v. Janssen Pharm., Inc.
 
 , No. 12-2132,
 
 2013 WL 486207
 
 , at *1 (D.N.J. Feb. 6, 2013) (fax containing information about reclassification of prescription drug for insurance purposes). The 2006 FCC Rule expressly states that informational faxes are not unsolicited advertisements.