**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 16-2185**

─────────────

CARLTON & HARRIS CHIROPRACTIC, INC., a West Virginia Corporation, individually and as the representative of a class of similarly-situated persons,

Plaintiff − Appellant,

v.

PDR NETWORK, LLC; PDR DISTRIBUTION, LLC; PDR EQUITY, LLC; JOHN DOES 1-10,

Defendants – Appellees.

─────────────────────────────────────

UNITED STATES OF AMERICA,

Amicus Supporting Appellant,

and

INOVALON, INC.,

Amicus Supporting Appellee.

─────────────

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:15-cv-14887)

─────────────

Argued:  September 10, 2020                    Decided:  December 7, 2020

─────────────

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

─────────────

Vacated and remanded by published opinion. Judge Diaz wrote the opinion, in which Judge Harris and Judge Thacker joined.

---

**ARGUED:** Glenn Lorne Hara, ANDERSON + WANCA, Rolling Meadows, Illinois, for Appellant. Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America. Kwaku A. Akowuah, SIDLEY AUSTIN LLP, Washington, D.C., for Appellees. **ON BRIEF:** Brian J. Wanca, ANDERSON + WANCA, Rolling Meadows, Illinois; D. Christopher Hedges, David H. Carriger, THE CALWELL PRACTICE PLLC, Charleston, West Virginia, for Appellant. Jeffrey N. Rosenthal, Philadelphia, Pennsylvania, Ana Tagvoryan, BLANK ROME LLP, Los Angeles, California; Marc E. Williams, Robert L. Massie, NELSON, MULLINS, RILEY & SCARBOROUGH LLP, Huntington, West Virginia; Carter G. Phillips, Kathleen Moriarty Mueller, SIDLEY AUSTIN LLP, Washington, D.C., for Appellees. Joseph H. Hunt, Assistant Attorney General, Michael S. Raab, Lindsey Powell, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael B. Stuart, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia; Thomas M. Johnson, Jr., General Counsel, Ashley S. Boizelle, Deputy General Counsel, Jacob M. Lewis, Associate General Counsel, Scott M. Noveck, FEDERAL COMMUNICATIONS COMMISSION, Washington, D.C., for Amicus United States of America. Kamyar Daneshvar, Associate General Counsel and Assistant Secretary, INOVALON, INC., Bowie, Maryland; Daniel S. Blynn, Elizabeth C. Rinehart, Meryl E. Bartlett, VENABLE LLP, Washington, D.C., for Amicus Inovalon, Inc.

---

DIAZ, Circuit Judge:

This case is before us for a second time, and we must once again consider whether the district court erred when it dismissed Carlton & Harris Chiropractic, Inc.'s complaint more than four years ago. Along the case's journey from the district court, through this court, to the United States Supreme Court, and back to this court, the principal legal issues have changed, expanded, and become more complex. Indeed, most of the arguments that the parties now make bear little resemblance to those that the district court and this court previously considered. As we explain, rather than resolve new issues in the case for the first time, we conclude that the most prudent course of action is to narrow the inquiry and remand what remains to the district court for its consideration.

I.

We review a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) de novo, "assuming as true the complaint's factual allegations and construing all reasonable inferences in favor of the plaintiff." *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (internal quotation marks omitted).

II.

PDR Network, LLC publishes the *Physicians' Desk Reference*, a compendium of prescription drug information widely used by medical providers. Around seven years ago, PDR Network sent a fax to Carlton & Harris, a chiropractic office in West Virginia. The fax's subject line read "FREE 2014 Physicians' Desk Reference eBook – Reserve Now."

3

The body of the fax instructed Carlton & Harris that it could reserve a copy of the eBook by going to PDR Network's website. The fax also included PDR Network's contact information and described how the *Physicians' Desk Reference* could benefit medical practices. J.A. 23.

After receiving the fax, Carlton & Harris, acting on behalf of itself and a putative class of other similarly situated fax recipients, sued PDR Network for violating the Telephone Consumer Protection Act (the "TCPA"). Relevant here, the TCPA prohibits the use of a fax machine to send "unsolicited advertisement[s]." 47 U.S.C. § 227(b)(1)(C).

PDR Network moved to dismiss Carlton & Harris's complaint, arguing that the fax wasn't an advertisement because it didn't offer anything for sale.[1] *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, No. 3:15-14887, 2016 WL 5799301, at *1 (S.D. W. Va. Sept. 30, 2016). Carlton & Harris opposed the motion, relying on a 2006 Federal Communications Commission Rule (the "2006 FCC Rule") interpreting the meaning of "unsolicited advertisement" within the TCPA. That rule states that "facsimile messages that promote goods or services even at no cost . . . are unsolicited advertisements under the TCPA's definition." Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25,967, 25,973 (May 3, 2006).

Carlton & Harris contended that the fax was an "unsolicited advertisement" under the 2006 FCC Rule because the fax offered a "free good or service." It further argued that the Hobbs Act required the district court to abide by the FCC's interpretation of the TCPA

---

[1] PDR Network did not (and does not now) dispute that it sent the fax unsolicited.

4

because that statute gives federal courts of appeals—not district courts—the "exclusive jurisdiction to 'enjoin, set aside, suspend [(in whole or in part)], or to determine the validity of'" FCC orders.[2] *Carlton & Harris*, 2016 WL 5799301, at *3 (quoting 28 U.S.C. § 2342(1)).

In its reply brief, PDR Network rejected the notion that it was asking the district court to "ignore" or "decline to 'adopt'" the 2006 FCC Rule. It argued that, instead, it wanted the court to "apply" the Rule, but merely interpret it in PDR Network's favor. J.A. 80–81.

The district court, however, took a third approach that neither party advanced. The court held that the Hobbs Act didn't require it to adopt the FCC's interpretation of the TCPA because the Hobbs Act doesn't control when no party "has challenged the validity of the FCC's interpretation of the TCPA." *Carlton & Harris*, 2016 WL 5799301, at *3. Acting under the presumption that the FCC's interpretation was valid, the court then

---

[2] Not to be confused with its criminal-law namesake, which makes robbery or extortion affecting interstate commerce a federal offense, *see* 18 U.S.C. § 371, this Hobbs Act is also known as the Administrative Orders Review Act. It provides a mechanism for challenging the validity of certain administrative orders, including all final and reviewable orders of the Federal Communications Commission. 28 U.S.C. § 2342(1). A party that wants a court to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such an order may challenge the order by filing a petition in the court of appeals for the judicial circuit where the petitioner resides or has its principal office, or in the Court of Appeals for the D.C. Circuit. 28 U.S.C. §§ 2342(1), 2343. That procedural path "promotes judicial efficiency," gives the power to declare agency action invalid to an appellate panel (rather than a single district judge), and allows for uniform interpretations of federal law. *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 464 (4th Cir. 2018) (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014)).

applied *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to determine that it need not defer to the 2006 FCC Rule because the TCPA's definition of "advertisement" is unambiguous.[3] *Id.* at *3–4.

The district court concluded that, under the TCPA, unsolicited fax advertisements are not actionable unless they have a commercial purpose. Because PDR Network's fax offered the *Physician's Desk Reference* for free, and because Carlton & Harris didn't plausibly allege that PDR Network benefitted commercially from offering the book for free, the court determined that the fax wasn't commercial in nature and dismissed Carlton & Harris's complaint without granting leave to amend. *Id*. at *4–5; J.A. 137.

Carlton & Harris appealed. Before us, PDR once again argued that it didn't dispute the validity or finality of the 2006 FCC Rule, but merely sought a favorable interpretation of that rule. We held that the district court erred in conducting a *Chevron* analysis because the Hobbs Act required the court to adopt the FCC's interpretation of the TCPA. *Carlton & Harris,* 883 F.3d at 464. We then interpreted the 2006 FCC Rule to mean that a fax offering free goods and services qualifies as an "advertisement" under the TCPA, regardless of whether it has an underlying commercial purpose. *Id.* at 466–69.

PDR Network petitioned the Supreme Court for certiorari, and the Court granted review as to the following issue: "[w]hether the Hobbs Act required the district court in

---

[3] The TCPA defines an "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019). Rather than answer that question, however, the Supreme Court determined that "the extent to which the [2006 FCC Rule] binds the lower courts may depend on the resolution of two preliminary sets of questions that were not aired before the Court of Appeals." *Id.* The first is whether the 2006 FCC Rule is a legislative or interpretive rule, and the second is whether PDR Network had a prior and adequate opportunity to seek judicial review of the Rule.[4]

The Court suggested that if the 2006 FCC Rule is an interpretive rule, or if PDR Network didn't have a prior and adequate opportunity to seek review, the Rule "may" not bind the district court. *Id.* at 2055–56. The Court vacated our decision and remanded for us to consider "these preliminary issues, as well as any other related issues that may arise in the course of resolving this case." *Id.* at 2056.

On remand, we ordered the parties to submit supplemental briefing on seven issues:

1. Whether a remand to the district court for discovery is necessary;

2. Whether the 2006 FCC [Rule] is a legislative rule or an interpretive rule;

3. Whether the defendants had a prior, adequate, and exclusive opportunity for review of the 2006 FCC [Rule];

4. Whether requiring the district court to accept the FCC's interpretation of the TCPA would violate the defendants' due process rights;

---

[4] No party made any argument addressing these issues when we first considered the case.

7

5. Whether requiring the district court to accept the FCC's interpretation of the TCPA would violate the separation of powers;

6. Whether *Chevron* deference would be appropriate if the Hobbs Act doesn't require the district court to accept the FCC's interpretation of the TCPA; and,

7. Whether the defendants' arguments on points (2), (3), (4), and (5) are forfeited.

*See* Order Directing Suppl. Brs. 1–2.

We consider the issues in turn.

## III.

### A.

To start, neither side believes that a remand for discovery is necessary.[5] We will not require discovery that no party desires. *United States v. Oliver*, 878 F.3d 120, 126 (4th Cir. 2017) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.") (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.)).

### B.

Next, both sides, as well as the United States (as amicus curiae), agree that the relevant portions of the 2006 FCC Rule are interpretive, rather than legislative. Both sides

---

[5] Carlton & Harris says that discovery is necessary only if the court reaches and decides certain questions. Appellants' Br. at 14. But we can resolve this appeal without reaching those questions.

8

also agree that the Rule's interpretive nature means that the district court was not bound to follow it. That consensus is correct.[6]

Interpretive rules are those "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015). While agencies must follow formal notice and comment procedures to issue legislative rules, they need not do so to issue interpretive rules. *Id.* at 97. And the FCC didn't engage in the notice and comment process with respect to the rule at issue here. As the government puts it, "the [FCC] did not purport to exercise [legislative] authority in connection with the relevant portion of the 2006 order." United States Amicus Br. at 18.

The convenience of having to jump through fewer procedural hoops to issue agency guidance, however, "comes at a price: Interpretive rules 'do not have the force and effect

---

[6] As for the seventh question on which we requested supplemental briefing, Carlton & Harris contends that we should permit its case to proceed past the pleading stage because PDR Network has waived and forfeited any argument "based on a supposed distinction between 'interpretive' and 'legislative' rules." Appellant's Br. at 18. Ultimately, however, questions of waiver and forfeiture fall within the court's discretion. *See Brown v. Nucor Corp.*, 785 F.3d 895, 920 (4th Cir. 2015); *W. Virginia Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 227 (4th Cir. 2019) (citing *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013)). In this case, even if PDR Network has waived or forfeited any argument based on the legislative/interpretive distinction, our discretion is best exercised to disregard "the parties' inattention" to the issue and have the district court resolve it on its merits. *Holness*, 706 F.3d at 592 (4th Cir. 2013) (looking past forfeiture when neither side raised an argument). This is particularly so because, in returning the case to us, the Supreme Court expressly instructed that we consider whether answers to the two issues it identified would render the 2006 FCC Rule nonbinding. Given that directive, we decline to decide this appeal in a manner that effectively sidesteps the Court's instructions.

of law and are not accorded that weight in the adjudicatory process.'" *Perez*, 575 U.S. at 97 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)); *see also Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) ("[A] court is not required to give effect to an interpretative regulation."). The 2006 FCC Rule is interpretive, and so the district court wasn't bound by it.

That conclusion also renders moot the third, fourth, and fifth questions that we posed to the parties. We need not consider whether PDR Network lacked a prior and adequate opportunity to seek judicial review of the 2006 FCC Rule because the Rule isn't binding for a different reason. Nor need we opine on the constitutional implications of requiring the district court to accept the FCC's interpretation of the TCPA because the district court doesn't have to accept that interpretation.

## C.

Having resolved the first five questions and the seventh, we turn to the sixth: what level of deference (if any) must the district court afford the 2006 FCC Rule. The Supreme Court didn't answer this question because the parties didn't brief it in the lower courts. *PDR Network*, 139 S. Ct. at 2056 ("As we have said many times before, we are a court of review, not of first view.") (cleaned up).

The same philosophy underlies our conclusion here, for we too adhere to the "principle that the district court should have the first opportunity to perform the applicable analysis." *Fusaro v. Cogan*, 930 F.3d 241, 263 (4th Cir. 2019) ("[T]his Court is a court of review, not of first view.") (cleaned up). We therefore decline to decide in the first instance

what deference should be given to the 2006 FCC Rule. But we do set out some basic guideposts to inform the district court's analysis.

The Supreme Court has held that *Chevron* deference applies only when a court interprets a rule issued pursuant to an agency's authority to "make rules carrying the force of law." *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006). When the agency's interpretation doesn't create law, courts must decide whether to afford that interpretation *Skidmore* deference. *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Since the 2006 FCC Rule doesn't carry the force and effect of law, and is therefore nonbinding, *Chevron* deference is inappropriate here. *See Nahigian v. Juno-Loudoun, LLC*, 677 F.3d 579, 587 (4th Cir. 2012) ("Because the . . . guidelines are not regulations issued with the intent that they act as binding law, they fall under the *Skidmore* deference regime.").

Under *Skidmore*, the weight that courts afford an agency's interpretation "depend[s] upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140. The Court later distilled that principle to mean that an interpretive rule is "entitled to respect only to the extent it has the power to persuade." *Gonzales*, 546 U.S. at 256 (cleaned up); *see also Perez v. Cuccinelli,* 949 F.3d 865, 877 (4th Cir. 2020) ("Absent eligibility for *Chevron* deference, agency interpretations are only given a level of respect commensurate with their persuasiveness.") (cleaned up). To gauge a rule's persuasiveness under *Skidmore*, courts look to "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001).

11

Cases applying these factors have run the gamut. Some have shown "great respect" to persuasive agency interpretations, while others have displayed "near indifference" to unpersuasive ones. *See id.* (citing cases); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 643–44 (4th Cir. 2018) (explaining that courts afford interpretive rules "modest *Skidmore* deference, to the extent the agency's reasoning gives it power to persuade, or, in the absence of such reasoning, no deference at all") (cleaned up).

In line with the Supreme Court's teaching, we too have held that the amount of *Skidmore* "respect" owed to an agency interpretation will "var[y]" depending on that interpretation's particular persuasive qualities. *New Cingular Wireless PCS, LLC v. Finley*, 674 F.3d 225, 237 (4th Cir. 2012). For example, we recently determined that an agency interpretation was unpersuasive because it represented an "inconsistent" and "stark departure" from "long-used practice." *Romero v. Barr*, 937 F.3d 282, 297 (4th Cir. 2019). We held that another warranted no deference because the agency's interpretation was "completely devoid of any statutory analysis" and made "no effort to explain or justify" the agency's position. *Sierra Club*, 909 F.3d at 645. But we deferred under *Skidmore* to a third agency's interpretation when that interpretation was "consistent with earlier pronouncements" and its reasoning was "thorough." *Knox Creek Coal Corp. v. Sec'y of Labor, Mine Safety & Health Admin.*, 811 F.3d 148, 161 (4th Cir. 2016).

While the district court disagreed (in dicta) with Carlton & Harris's reading of the 2006 FCC Rule, the court didn't examine the Rule's persuasiveness under *Skidmore* or the extent to which that persuasiveness requires deference. Rather than guess as to how much

deference (if any) the district court is inclined to give the Rule, we think the better course is to allow that court to analyze that issue in the first instance.

IV.

One other matter merits discussion. At oral argument, the parties disagreed over whether the district court erred by failing to grant Carlton & Harris leave to amend to allege in more detail that PDR Network sent the fax at issue to further a commercial goal. In its complaint, Carlton & Harris alleged that PDR Network "benefit[s] or profit[s] from the sale of the products, goods, and services being offered" in the fax. J.A. 11. The district court concluded that this statement didn't plausibly allege that PDR Network benefitted commercially from sending the fax. *See Carlton & Harris*, 2016 WL 5799301, at *5.

Before the district court, Carlton & Harris didn't move separately for leave to amend its pleading, but rather requested leave in its opposition to PDR Network's motion to dismiss. The district court didn't expressly address Carlton & Harris's request for leave; instead, it effectively denied it by entering judgment for PDR Network. *Id.*; J.A. 137.

Carlton & Harris contends that the district court's resolution of its request was an abuse of discretion. PDR Network, in turn, argues that district courts in this circuit don't abuse their discretion by denying requests for leave to amend not made in a formally noticed motion.

Both positions find some support in our cases.[7]  But given that we are remanding the case to the district court to consider what level of deference the court should afford the 2006 FCC Rule and what the proper meaning of "unsolicited advertisement" is in light of that deference, we find it unnecessary to resolve this issue.  On remand, we expect that Carlton & Harris would seek leave to amend in the appropriate manner if the need arises.

V.

For the reasons given, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[7] *Compare United States ex rel. Carson v. Manor Care*, 851 F.3d 293, 305 n.6 ("[A]n outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."), *and David v. Alphin*, 704 F.3d 327, 343 (4th Cir. 2013) (same), *with ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 218 (4th Cir. 2019) ("[A] district court does not abuse its discretion by declining to grant a request to amend when it is not properly made as a motion."), *and Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (same).