20-1075-ag
Gorss Motels, Inc., et al. v. Federal Communications Commission, et al.

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2020
No. 20-1075


GORSS MOTELS, INC., BAIS YAAKOV OF SPRING VALLEY, ROGER H. KAYE, AND
ROGER H. KAYE, MD PC,
Petitioners,


v.


FEDERAL COMMUNICATIONS COMMISSION AND UNITED STATES OF AMERICA,
Respondents.

ARGUED: FEBRUARY 2, 2021
DECIDED: DECEMBER 3, 2021

ON PETITION FOR REVIEW OF AN ORDER OF THE FEDERAL COMMUNICATIONS
COMMISSION


Before:      JACOBS, SULLIVAN, MENASHI, Circuit Judges.

Petitioners challenge a Federal Communications Commission order that

removed the Solicited Fax Rule from the Code of Federal Regulations.    That

order was issued in response to the D.C. Circuit's decision holding that the

Solicited Fax Rule was unlawful, and vacating a 2014 order of the FCC that affirmed the validity of the Rule. The questions before us are whether the D.C. Circuit's decision binds this Court and whether the agency erred by repealing the Solicited Fax Rule following the D.C. Circuit's ruling. We conclude that we are bound by the D.C. Circuit's decision vacating the Rule and that the agency did not err. Accordingly, we **DENY** the petition for review.

Judge Menashi dissents in a separate opinion.

_____

AYTAN Y. BELLIN, Bellin & Associates, LLC, White Plains, NY (Roger Furman, on the brief), for Petitioners.

ADAM G. CREWS, Washington D.C. (Thomas M. Johnson, Jr., General Counsel, Jacob M. Lewis, Associate General Counsel, on the brief), Counsel for Respondent Federal Communications Commission, and Robert Nicholson, Counsel for Respondent United States of America.

DENNIS JACOBS, Circuit Judge:

Anyone who receives a facsimile advertisement that comes unsolicited can sue the sender for $500 under the Telephone Consumer Protection Act ("TCPA"), a federal statute implemented by the Federal Communications Commission

2

("FCC" or "Commission").   <u>See</u> 47 U.S.C. §§ 227(b)(1)(C), (b)(2), (b)(3)(B).   The FCC regulation at issue in this case is known as the Solicited Fax Rule because it required opt-out instructions to be included even on fax advertisements that had been invited, <u>i.e.</u>, faxes that were *not* unsolicited.

The fax machine may be an anachronism, but litigation concerning its alleged misuse is evergreen.   Before us now is a petition for review brought by Gorss Motels, Inc.; Bais Yaakov of Spring Valley; Roger H. Kaye; and Roger H. Kaye, MD PC (collectively, "Gorss"), which challenges the FCC's decision to remove the Solicited Fax Rule from the Code of Federal Regulations ("CFR").   Gorss, a serial TCPA Plaintiff whose many lawsuits are premised on Solicited Fax Rule violations, would prefer that the regulation remain on the books.

In 2006, the FCC promulgated the Solicited Fax Rule; and in 2014, the FCC issued an order affirming the validity of the Rule (the "2014 Order").   Multiple facial challenges were brought to the 2014 Order pursuant to the Hobbs Act, 28 U.S.C. § 2342(1), and were consolidated in the United States Court of Appeals for the District of Columbia Circuit pursuant to 28 U.S.C. § 2112(a)(3).   In 2017, the D.C. Circuit held that the Solicited Fax Rule was unlawful and invalidated the

3

2014 Order.   See Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n, 852 F.3d 1078, 1079 (D.C. Cir. 2017).   Last year, the FCC responded to Bais Yaakov by removing the 2014 Order and the underlying Solicited Fax Rule from the CFR. See Matter of Rules and Regulations Implementing the Tel. Consumer Protec. Act of 1991, 35 FCC Rcd. 3079 (2020) (hereinafter, "Repeal Order").

Gorss urges us to vacate the Repeal Order on the ground that Bais Yaakov governs only within the D.C. Circuit and therefore did not compel the agency to repeal the rule altogether.

Generally speaking, a federal agency need not acquiesce to one or more adverse rulings.   But the Hobbs Act establishes a "special statutory review proceeding," 5 U.S.C. § 703, that channels all pre-enforcement facial challenges to certain FCC orders to a single circuit court, 28 U.S.C. § 2342(1).   Pursuant to the Hobbs Act's channeling mechanism, the D.C. Circuit became "the sole forum for addressing the validity of" the Solicited Fax Rule.   King v. Time Warner Cable Inc., 894 F.3d 473, 476 n.3 (2d Cir. 2018) (alterations and internal quotation marks omitted).   So once the D.C. Circuit invalidated the 2014 Order and the Solicited Fax Rule, that holding became binding in effect on every circuit in which the

4

regulation's validity is challenged.   The FCC therefore was bound to comply with the D.C. Circuit's mandate and could not pursue a policy of nonacquiescence.   Accordingly, we **DENY** the petition for review.

# I

The TCPA, a statute designed (in another day) to help unclog the nation's fax machines, prohibits the use of "any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement."   See 47 U.S.C. § 227(b)(1)(C).   As amended by the Junk Fax Prevention Act of 2005, the TCPA excepts a narrow category of unsolicited faxes from this sweeping prohibition: an otherwise unsolicited fax is permitted if the sender (a) has an "established business relationship" with the recipient, (b) obtains the recipient's fax number through certain means, and (c) includes a detailed opt-out notice on the first page of the fax.   Id. § 227(b)(1)(C)(i)–(iii).

The Solicited Fax Rule, promulgated in 2006, provided that a fax "sent to a recipient that *has* provided prior express invitation or permission to the sender must include an opt-out notice" identical to the one required for faxes that were

5

unsolicited. 47 C.F.R. § 64.1200(a)(4) (2019) (repealed 2020) (emphasis

added). In that way, *all* faxed advertisements were required to contain opt-out

instructions, regardless of whether the recipient had previously consented to

receipt. See Bais Yaakov, 852 F.3d at 1080 (explaining that the Rule "mandate[d]

that senders of *solicited* faxes comply with a statutory requirement that applies

only to senders of *unsolicited* faxes").

A "firestorm broke out over the new rule" as class-actions alleging

noncompliance proliferated across the country. See Brodsky v. HumanaDental

Ins. Co., 910 F.3d 285, 289 (7th Cir. 2018). The stakes were high. The TCPA

authorizes statutory damages of $500 per unlawful fax (triple that amount for

willful violations) – and faxed advertisements are frequently dispatched en

masse. See, e.g., Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare,

Inc., 863 F.3d 460, 463–64 (6th Cir. 2017) (noting that the defendant in a TCPA

class action was facing $20 million in liability for sending one errant fax to

roughly 40,000 recipients); Bais Yaakov, 852 F.3d at 1081 (describing an instance

where TCPA plaintiffs claimed $150 million in damages for Solicited Fax Rule

violations); Nack v. Walburg, 715 F.3d 680, 682 (8th Cir. 2013) (explaining that

6

the TCPA defendant "faces a class-action complaint seeking millions of dollars even though there is no allegation that he sent a fax to any recipient without the recipient's prior express consent").

As their exposure mounted, fax-senders turned to the FCC for relief. Many obtained retroactive waivers that excused violations of the Solicited Fax Rule.[1] Others questioned whether the FCC had statutory authority to regulate faxes that were solicited. In response, the FCC posted notice and invited comment on whether the Solicited Fax Rule was lawful. Eventually, in the 2014 Order, the FCC concluded (over two dissents) that it did indeed have statutory authority to regulate solicited faxes (but reaffirmed that the retroactive waivers were properly granted). See Matter of Rules and Regulations Implementing the Tel. Consumer Protec. Act of 1991, 29 FCC Rcd. 13998, 14013 (2014).

---

[1] The FCC justified the issuance of retroactive waivers on the ground that it had issued faulty guidance that confused regulated parties. Specifically, the FCC at one point told regulated parties that the Solicited Fax Rule "only applies to communications that constitute unsolicited advertisements." In the Matter of Rules and Regulations Implementing the Tel. Consumer Protec. Act of 1991, 21 FCC Rcd. 3787, 3810 n.154 (2006). That instruction contradicted the text of the Rule. See 47 C.F.R. § 64.1200(a)(4) (2019) (repealed 2020).

When the 2014 Order was subjected to facial Hobbs Act challenges in multiple circuits, 28 U.S.C. § 2342(1), the judicial panel on multidistrict litigation ("JPML") conducted a lottery – won by the D.C. Circuit – and consolidated the petitions there pursuant to 28 U.S.C. § 2112(a)(3). Ruling on the consolidated petitions, the D.C. Circuit vacated the 2014 Order on the ground that the "FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes." Bais Yaakov, 852 F.3d at 1083. Then-Judge Kavanaugh reasoned that "Congress drew a line" in the TCPA between faxes that were solicited and those that were not, and authorized the FCC to regulate only the latter. Id. at 1082. Challenges to the retroactive waivers were dismissed as moot. Id. at 1083 n.2.

Once the Bais Yaakov decision became final (the petition for certiorari was denied in 2018), the FCC, by its Consumer and Governmental Affairs Bureau, removed the Solicited Fax Rule from the CFR "in light of the [Bais Yaakov] court's decision that the rule is unlawful." In the Matter of Rules and Regulations Implementing the Tel. Consumer Protect. Act of 1991, 33 FCC Rcd. 11179, 11183 (2018). Entities whose class-action claims depended on the Rule

8

(including Gorss) then asked the full Commission to review that decision.

According to the challengers, Bais Yaakov did not require the elimination of the

Rule because: (a) Bais Yaakov addressed only the 2014 Order, not the underlying

2006 Rule, and (b) the D.C. Circuit's mandate was discretionary and did not

compel acquiescence.

The Repeal Order, issued by the full Commission, rejected the challenge.

That rejection is the subject of this petition for review.    The FCC reasoned that

keeping the Solicited Fax Rule in the CFR would "create unnecessary confusion

and consternation" because interested parties "could not use the CFR to know

what the law is without also being aware of and understanding the significance

of the Bais Yaakov decision."    Repeal Order at 3082.

The Commission then rejected both arguments posited by the challengers.

It first explained that Bais Yaakov ruled on the validity of the Solicited Fax Rule

*itself* notwithstanding that it was technically reviewing the 2014 Order, rather

than the original rule.    The Commission next rejected the argument that Bais

Yaakov's mandate did not require vacatur of the Solicited Fax Rule.    It reasoned

that the Commission had no choice but to repeal the Solicited Fax Rule, which

9

"could no longer be viewed as lawful after [Bais Yaakov's] pronouncement."

Repeal Order at 3083. Because "the D.C. Circuit's decision is binding on all

other circuits," the Commission considered that it was "bound to comply with

the D.C. Circuit's mandate." Id. at 3084. The Repeal Order dismissed

challenges to the FCC's retroactive waivers as moot. Id. The rationale of the

Repeal Order was thus limited to the impact of Bais Yaakov. It did not itself

consider whether the Solicited Fax Rule comports with the TCPA, or state that

the Rule was removed as a matter of policy, either to enforce regulations

consistently across the circuits or for any other reason.[2]

Gorss filed a timely petition for review of the Repeal Order. See 28 U.S.C.

§ 2342(1).

---

[2] The FCC's brief asserts that it repealed the Solicited Fax Rule "as a matter of policy because of the Rule's widespread invalidation." FCC Br. at 30. But a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). The FCC's Repeal Order does not purport to do away with the Solicited Fax Rule as a matter of policy. Rather, it accepted the holding of Bais Yaakov, determining that it had no option but to comply with the D.C. Circuit's mandate. Repeal Order at 3083. Accordingly, we ignore additional justifications proffered for the first time on appeal.

Gorss steps back from the threshold issue of whether <u>Bais Yaakov</u> is binding on this Court and the FCC, and urges us to reconsider the question posed in <u>Bais Yaakov</u>: whether the FCC has statutory authority to regulate solicited faxes.

Other courts have taken the approach advanced by Gorss (albeit without much success for plaintiffs). Earlier this year, the First Circuit opted to "sidestep" the question of whether <u>Bais Yaakov</u> binds other circuits because it concluded that the decision was correct in any event. See <u>Bais Yaakov of Spring Valley v. ACT, Inc.</u>, 12 F.4th 81, 86 (1st Cir. 2021); <u>see also</u> <u>Physicians Healthsource, Inc. v. Cephalon, Inc.</u>, 954 F.3d 615, 624 n.11 (3d Cir. 2020) (concluding that it did not need to decide whether <u>Bais Yaakov</u> was binding as it reached the "same conclusion . . . independently"). But this approach is not available to us here. Unlike the First Circuit, which reviewed a district court's ruling that the Solicited Fax Rule was invalid, the issue before us is the validity of the Repeal Order. The Repeal Order was expressly based on the FCC's view that the "D.C. Circuit's decision is binding on all other circuits." Repeal Order

11

at 3084.  Accordingly, we must consider the binding effect of <u>Bais Yaakov</u>.

We have jurisdiction to review the Repeal Order pursuant to 28 U.S.C. § 2342(1) and "will overturn [the FCC's] decision only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." <u>Cablevision Sys. Corp. v. Fed. Commc'ns Comm'n</u>, 570 F.3d 83, 91 (2d Cir. 2009) (internal quotation marks omitted).  When an agency decides a question of law, our review is <u>de novo</u>.  See <u>Aleutian Cap. Partners, LLC v. Scalia</u>, 975 F.3d 220, 229 (2d Cir. 2020).

When, as here, a court invalidates an agency rule pursuant to Hobbs Act review, that ruling is binding on subsequent courts tasked with determining the regulation's validity.  Accordingly, consistent with the holding in <u>Bais Yaakov</u>, we conclude that the FCC did not err by repealing the Solicited Fax Rule.

This opinion should not be over-read to suggest that if a Hobbs Act court *upholds* a challenged order, the order is immune from challenge in subsequent enforcement proceedings.  Such a result would raise due process concerns, and it does not appear that Congress contemplated such a sweeping effect when it enacted the Hobbs Act.  See <u>PDR Network, LLC v. Carlton & Harris</u>

12

<u>Chiropractic, Inc.</u>, 139 S. Ct. 2051, 2062-63 (2019) (Kavanaugh, J., concurring in the judgment). We decide only the effect of a Hobbs Act court's decision that *invalidates* a rule on a facial challenge – when subsequent courts have nothing left to enforce.

**A**

The Hobbs Act (or Administrative Orders Review Act) is a jurisdiction-channeling statute that "provides for facial, pre-enforcement review of FCC orders."[3] <u>PDR Network</u>, 139 S. Ct. at 2058 (Kavanaugh, J., concurring in the judgment). It gives the federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend . . . or to determine the validity of" certain FCC orders. 28 U.S.C. § 2342(1). After issuance of an order subject to the Hobbs Act, an aggrieved party has 60 days to file a petition for review in a circuit court with

---

[3] The Hobbs Act also provides for review of certain actions of the Department of Agriculture, the Department of Transportation, the Federal Maritime Commission, the Atomic Energy Commission, the Surface Transportation Board, and the Department of Housing and Urban Development. <u>See</u> 28 U.S.C. §§ 2342(2)–(6).

venue.[4]  Id. § 2344.

Because the types of FCC orders subject to Hobbs Act review tend to apply nationwide, petitions for review are sometimes filed in multiple circuits.   When that happens within the first ten days after the order is issued, 28 U.S.C. § 2112 is triggered, which directs the JPML to randomly "designate one court of appeals . . . in which the record is to be filed, and [to] issue an order consolidating the petitions for review in that court of appeals."   28 U.S.C. § 2112(a)(3).   Any and all other petitions filed more than ten days after issuance but within § 2344's 60-day window are also transferred to the randomly-selected consolidating court.   28 U.S.C. § 2112(a)(5).   Because the 60-day time limit is jurisdictional, a facial challenge commenced outside that window cannot be maintained.   See New York v. United States, 568 F.2d 887, 892 (2d Cir. 1977).   The transferee court thus "has exclusive jurisdiction to make and enter . . . a judgment determining the

_____

[4]  Venue for Hobbs Act petitions lies "in the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit."   28 U.S.C. § 2343.

14

validity of . . . the order of the agency." 28 U.S.C. § 2349(a).

Together, the Hobbs Act and § 2112(a) channel all facial challenges into a single circuit court in order to "ensure[] uniformity nationwide." Sandusky, 863 F.3d at 467. Post-consolidation, the designated court becomes "the sole forum for addressing the validity of the FCC's order." King, 894 F.3d at 476 n.3 (alterations and internal quotation marks omitted). So when Bais Yaakov wound up in the D.C. Circuit via this channeling device, that court's adverse decision was a ruling on all of the facial challenges that could ever arise. This mechanism alleviates the confusion that would ensue from conflicting rulings, dueling stays, and incongruent appeals.

**B**

The precise holding of Bais Yaakov is disputed: did Bais Yaakov invalidate only the 2014 Order, or the 2006 Solicited Fax Rule as well? See Brodsky, 910 F.3d at 289-90 (recognizing ambiguity in Bais Yaakov). The petition at issue in Bais Yaakov directly challenged the 2014 Order, and was filed well after the deadline for challenging the 2006 Solicited Fax Rule; but as the Repeal Order

15

recites, the 2014 Order essentially "reopened the question of whether the Solicited Fax Rule was authorized by . . . statute," Repeal Order at 3083, so that "the validity of the 2014 [O]rder depended on the validity of the 2006 Solicited Fax Rule," True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 930 (9th Cir. 2018).

Bais Yaakov is clear on this point. The D.C. Circuit concluded that the "Solicited Fax Rule is . . . unlawful," and in turn invalidated the 2014 Order, which "interpreted and applied" the Solicited Fax Rule. Bais Yaakov, 852 F.3d at 1079. As the Solicited Fax Rule and the 2014 Order are inextricable, we conclude (along with our sister courts) that Bais Yaakov invalidated the Solicited Fax Rule as well as vacated the 2014 Order. See Sandusky, 863 F.3d at 467-68; True Health, 896 F.3d at 930.[5] The dissent posits that our holding amounts to "a new rule of intercircuit stare decisis," where "not only the judgment in the case but also the reasoning of its opinion was universally binding." We do not

---

[5] This is consistent with the FCC's view, explained in the Repeal Order. See Repeal Order at 3082 ("[T]he Solicited Fax Rule was struck down by the D.C. Circuit in Bais Yaakov even though the 2006 order adopting that rule was not technically before the Court.").

16

announce such a sweeping new rule.   The D.C. Circuit expressly held that the Solicited Fax Rule was unlawful and thus invalidated the 2014 Order; it is that precise ruling only that binds us today.

The case before us adds yet another layer to the analysis: Gorss challenges the Repeal Order, which removed the 2014 Order and the Solicited Fax Rule from the CFR following Bais Yaakov.   According to Gorss, the holding of Bais Yaakov is limited to the validity of the 2014 Order, so even if Bais Yaakov is binding in the Second Circuit, we can nevertheless address the validity of the Solicited Fax Rule in the context of the Repeal Order.   This argument chases its tail.   We conclude that, if we are bound by Bais Yaakov, then its holding decides the instant challenge to the Repeal Order.


### C

Gorss advances a closely related argument that the FCC was not required to remove the Solicited Fax Rule from the Code of Federal Regulations in response to the ruling of a single circuit.   According to Gorss, the FCC could

17

have maintained a policy of nonacquiescence.   We disagree.   The handwriting on the wall does not admit of a second opinion.

**1**

In general, agencies may maintain a policy of nonacquiescence, which is "[a]n agency's policy of declining to be bound by lower-court precedent that is contrary to the agency's interpretation of its organic statute, but only until the Supreme Court has ruled on the issue."   NONACQUIESCENCE, Black's Law Dictionary 1073 (11th ed. 2019).   Nonacquiescence allows an agency to adhere to an interpretation of its statute notwithstanding that it has been rejected by a court, or even by more than one.

Inter-circuit nonacquiescence ensures that a single court cannot undo years of administrative work.   Promulgating a regulation is purposefully burdensome and assumes prolonged scrutiny and input by the agency, the stakeholders, and the public; so it is problematic if an agency's work could be erased by a single court (or by the happy acquiescence of a re-staffed agency).   Nonacquiescence also promotes inter-circuit dialogue.   When tricky legal questions percolate, judges and courts can build upon and critique each other's reasoning, which

18

often "yield[s] a better informed and more enduring final pronouncement."

Arizona v. Evans, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting).   And close

questions that split circuits can provoke Supreme Court review.   Finally,

refusing to succumb to the view of the first court that disagrees with it allows an

agency to pursue a uniform regulatory agenda nationwide.

For the reasons set out below, however, invalidation of an order by a

Hobbs Act court forecloses the doctrine of nonacquiescence.


**2**

After Hobbs Act petitions are consolidated under § 2112(a)(3), a ruling by

the consolidating court that grants a facial challenge is binding nationwide.  This

holding is consistent with holdings in our sister circuits.   See True Health, 896

F.3d at 930; Sandusky, 863 F.3d at 467.   Though the federal system does not

generally permit decisions of the circuit courts to have nationwide effect, the

Hobbs Act mechanism produces that effect.   As described above, the Hobbs Act

establishes a "special statutory review proceeding" that channels all of the pre-

enforcement facial challenges to an FCC order that could ever arise to a single

19

court tasked with deciding the validity of the order. See 5 U.S.C. § 703; 28 U.S.C. §§ 2342(1), 2349. The designated circuit then becomes the "the sole forum for addressing the validity of" the challenged order. See King, 894 F.3d at 476 n.3 (alterations and internal quotation marks omitted). If the designated court invalidates the order, it cannot be enforced by another circuit, whether or not it is removed from the books.

It follows that the FCC correctly concluded that the Repeal Order was required once the Bais Yaakov decision became final: "Because Bais Yaakov struck down the Solicited Fax Rule, the [Commission] acted properly in eliminating that rule and, indeed, had no discretion but to do so." Repeal Order at 3083. See also Repeal Order at 3084 ("[T]he D.C. Circuit's decision is binding on all other circuits," and therefore, "[t]he Commission is . . . bound to comply with the D.C. Circuit's mandate."). Without the Repeal Order, the Solicited Fax Rule and the 2014 Order would have remained on the books as vestiges. The Repeal Order was therefore a ministerial act.

The purpose of the Hobbs Act is to "avoid[] the delays and uncertainty" that transpire when "multiple pre-enforcement proceedings [are] filed and

20

decided over time in multiple district courts and courts of appeals." PDR Network, 139 S. Ct. at 2059 (Kavanaugh, J., concurring in the judgment). The Hobbs Act's specialized statutory scheme would fail of its purpose if, after the designated circuit court invalidates a challenged order, the agency could enforce it nonetheless. That is because "in much the same way that our disposition of an appeal operates on the judgment of the district court, a disposition of a Hobbs Act petition operates on the order under review" and "the agency that made it." Gorss Motels, Inc. v. Safemark Sys., LP, 931 F.3d 1094, 1108 (11th Cir. 2019) (Pryor, J., concurring); see also PDR Network, 139 S. Ct. at 2063 (Kavanaugh, J., concurring in the judgment) (if the reviewing court "determines that the order is invalid and enjoins it, the agency can no longer enforce the order."). It is unsurprising that the Hobbs Act and other "channeling statutes have long been interpreted as authorizing the reviewing court to universally vacate invalid regulations." Mila Sohoni, The Power to Vacate a Rule, 88 GEO. WASH. L. REV. 1121, 1176–77 (2020).

Gorss fails to identify any example of an agency responding to a Hobbs Act invalidation with nonacquiescence. Repeal normally follows vacatur by a circuit court acting pursuant to a special statutory review proceeding like Hobbs Act consolidation. For example, in <u>Zen Magnets, LLC v. Consumer Product Safety Commission</u>, a company petitioned pursuant to 15 U.S.C. § 2060 for review of a Consumer Product Safety Commission ("CPSC") regulation. <u>See</u> 841 F.3d 1141, 1147 (10th Cir. 2016). That statute is a Hobbs Act analog: it provides a 60-day window for facial challenges to certain CPSC actions to be brought and consolidates all such challenges in a single court of appeals via 28 U.S.C. § 2112(a)(3). 15 U.S.C. § 2060(a). In <u>Zen Magnets</u>, the Tenth Circuit vacated the challenged regulation and remanded to the CPSC, 841 F.3d at 1155, which promptly removed the rule from the CFR, explaining that the removal "responds to a decision of the . . . Tenth Circuit that vacated the rule." 82 FR 12716–01, 2017 WL 878371 (Mar. 7, 2017). We therefore reject Gorss's contention that the Repeal Order here was anomalous.

\* \* \*

In sum, when a consolidating court becomes the "sole forum" that can address the facial validity of a challenged order, and invalidates it, the final ruling of that court binds subsequent courts tasked with considering the facial validity of the order, and the agency therefore lacks the option of nonacquiescence. See King, 894 F.3d at 476 n.3. Accordingly, we detect no error in the FCC's Repeal Order.

## CONCLUSION

For the reasons stated above, the petition for review is **DENIED.**

23

20-1075-ag
*Gorss Motels, Inc. v. FCC*

MENASHI, *Circuit Judge*, dissenting:

As the court recognizes, in this challenge to an agency action, we "must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196 (1947) (describing *SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80 (1943)). Here, we are considering a challenge to an order of the Federal Communications Commission ("FCC") repealing the 2006 Solicited Fax Rule. The FCC repealed the rule on the ground that the D.C. Circuit had declared it unlawful in a Hobbs Act proceeding, and "the D.C. Circuit's decision is binding on all other circuits."[1]

This conclusion by the agency conflicts with three fundamental precepts of the federal court system. First, one circuit is not normally bound by the decisions of another circuit. *See Rates Tech., Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 173-74 (2d Cir. 2012) ("[O]ur court is not bound by the holdings … of other federal courts of appeal."); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("[U]ntil the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determinations of the merits of federal questions presented

---

[1] Order, *Junk Fax Prevention Act of 2005 Petitions for Reconsideration and/or Declaratory Ruling and Retroactive Waiver of 47 CFR 64.1200(a)(4)(IV) Regarding the Commission's Opt-Out Notice Requirement for Faxes Sent with the Recipient's Prior Express Permission*, 35 F.C.C. RCD. 3079, 3084 (2020) [hereinafter Repeal Order].

to them; if a federal court simply accepts the interpretation of another circuit without independently addressing the merits, it is not doing its job.") (internal quotation marks and alteration omitted); *see also* Samuel Estreicher & Richard L. Revesz, *Nonacquiescence by Federal Administrative Agencies*, 98 YALE L.J. 679, 736 (1989) (noting "our legal system's rejection of intercircuit stare decisis").

Second, the judgment of a federal court binds only the parties before it. Federal courts are empowered only "to redress the injuries sustained by a particular plaintiff in a particular lawsuit," *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay), and therefore federal courts cannot "provide relief beyond the parties to the case," *Trump v. Hawaii*, 138 S. Ct. 2392, 2427 (2018) (Thomas, J., concurring).[2]

Third, "[i]n general, nonmutual offensive collateral estoppel is not allowed against the government," *Benenson v. Comm'r of Internal Revenue*, 910 F.3d 690, 697 (2d Cir. 2018), and therefore an adverse judgment against the federal government does not preclude further "litigation in multiple forums," *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984); *see also CASA de Md., Inc. v. Trump*, 971 F.3d 220, 261 (4th Cir. 2020) ("The Supreme Court has likewise recognized that the

---

[2] *See also* William Baude, *The Judgment Power*, 96 GEO. L.J. 1807, 1815 (2008) ("During the ratification of the Constitution and immediately afterwards, a wide range of constitutional scholars, jurists, and officers explained that the 'judicial' power vested by [Article III, Section 2,] was the power to make authoritative and final judgments in individual cases."); Felix Frankfurter & Henry M. Hart, Jr., *The Business of the Supreme Court at October Term, 1934*, 49 HARV. L. REV. 68, 103 (1935) (noting that under the Constitution "the existence of a controversy between parties before the Court, and the necessity of resolving it, became the avowed and exclusive basis of the power of judicial review").

federal government is generally free to relitigate issues it has already lost, except against parties to such prior litigation."), *vacated for reh'g en banc*, 981 F.3d 311 (4th Cir. 2020) (dismissed Mar. 11, 2021).

Perhaps Congress may depart from these principles. But when Congress intends to depart from such well-established legal norms, it "can, must, and does speak clearly." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2062 (2019) (Kavanaugh, J., concurring in the judgment). In this case, the court concludes that Congress has spoken clearly enough to create a mechanism by which the decision of one court of appeals may have "nationwide effect." *Ante* at 19. Through this mechanism, the court explains, a holding of the D.C. Circuit "is binding on subsequent courts" that consider the same legal issues—including those, such as our court, that do not answer to the D.C. Circuit. *Id.* at 12. I disagree, and therefore I dissent.

## I

In my view, the consolidating statute here, 28 U.S.C. § 2112,[3] does not clearly create such a novel mechanism. Instead, it applies the mechanism of the judicial panel on multidistrict litigation to consolidate pre-enforcement challenges to agency orders in a single court. *See* 28 U.S.C. § 2112(a)(3) (invoking "the judicial panel on

---

[3] The Hobbs Act, 28 U.S.C. § 2341 *et seq.*, was adopted in 1950 and applies to a subset of agencies. *See* Act of Dec. 29, 1950, Pub. L. No. 81-901, 64 Stat. 1129. Section 2112, governing the filing of the administrative record, was adopted in 1958, applies to all agencies, and is codified separately from the Hobbs Act in the U.S. Code. *See* Act of August 28, 1958, Pub. L. No. 85-791, § 2, 72 Stat. 941. That the Hobbs Act was amended to include a cross-reference to § 2112, *see id.* § 31; 28 U.S.C. § 2346, indicates that Congress saw § 2112 as a separate and freestanding provision. I therefore refer to the Hobbs Act and § 2112 as separate statutes.

multidistrict litigation authorized by section 1407 of this title"). No one believes that when the judicial panel on multidistrict litigation consolidates cases in a single court under § 1407, the court's decision in the consolidated case binds other courts or non-parties. Nothing about § 2112 requires a different conclusion. That provision consolidates petitions for review challenging the same agency order to promote judicial efficiency in the filing of the administrative record,[4] but it does not say that anything other than the normal rules of precedent and judicial practice should apply.[5]

Unlike some other statutes, which "expressly preclude judicial review in subsequent enforcement actions," the Hobbs Act "provides for" and consolidates "facial, pre-enforcement review of FCC orders" but "does not bar a defendant in an enforcement action from arguing that the agency's interpretation of the statute is wrong." *PDR Network*, 139 S. Ct. at 2058-59 (Kavanaugh, J., concurring in the judgment). For

---

[4] *See, e.g.,* H.R. REP. NO. 85-842, at 6 (noting that the primary purpose of the legislation was to limit the work needed to develop the administrative record when there are multiple petitions for review); S. REP. NO. 85-2129 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3996, 3997 ("The object of the instant legislation is to eliminate the filing of the entire record except in those instances where it is required for an adequate determination or where the abbreviation of the record would prove more costly than the transmission of the entire record.").

[5] Several decisions from other courts of appeals treat out-of-circuit cases consolidated under § 2112 as persuasive but not binding authority. *See, e.g., Transmission Agency of N. Cal. v. FERC*, 495 F.3d 663, 674-75 (D.C. Cir. 2007) (considering *Bonneville Power Admin. v. FERC*, 422 F.3d 908 (9th Cir. 2005)); *WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1273 (10th Cir. 2007) (considering *Texas Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393 (5th Cir. 1999)); *Texas Office of Pub. Util. Counsel v. FCC*, 265 F.3d 313, 324 (5th Cir. 2001) (considering *Sw. Bell Tel. Co. v. FCC*, 153 F.3d 523 (8th Cir. 1998)).

this reason, the consolidated proceeding does not decide "all of the facial challenges that could ever arise." *Ante* at 15. Parties against whom an FCC order is subsequently enforced may argue that the order is facially invalid.[6] The scheme does not indicate that Congress intended to depart from the normal rules according to which the decision of a court of appeals binds only the parties before the court and has precedential force only within its circuit.

## II

The court speculates that "[t]he Hobbs Act's specialized statutory scheme would fail of its purpose if, after the designated circuit court invalidates a challenged order, the agency could enforce it nonetheless." *Ante* at 21. Yet the "purpose" of the Hobbs Act was specifically "to eliminate the urgency deficiency type of review."[7]

---

[6] It is true that we have said that a § 2112 consolidation of challenges to a 2015 FCC order was "assigned to the D.C. Circuit, which thereby became 'the sole forum for addressing ... the validity of the FCC's' order." *King v. Time Warner Cable Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018) (quoting *GTE S., Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999)). But we and the Fourth Circuit, which we were quoting, were describing the forum for *pre-enforcement* challenges. Even the court in today's opinion recognizes that the validity of an FCC order may be challenged again "in subsequent enforcement proceedings." *Ante* at 12.

[7] *Providing for the Review of Orders of Certain Agencies, and Incorporating into the Judicial Code Certain Statutes Relating to Three-Judge District Courts: Hearing on H.R. 2915 and H.R. 2916 Before Subcomm. No. 2 of the H. Comm. on the Judiciary*, 81st Cong. 151 (1949) (statement of Rosel H. Hyde, FCC Commissioner). The Urgent Deficiency Act (UDA) of 1913 "required that three-judge district courts, composed of at least one circuit court judge, review Interstate Commerce Commission (ICC) orders." Jason N. Sigalos, *The Other Hobbs Act: An Old Leviathan in the Modern Administrative State*, 54 GA. L. REV. 1095, 1102 (2020). The decisions of the three-judge courts

5

And the "object" of consolidation under § 2112 was "to eliminate the filing of the entire record except in those instances where it is required."[8] These purposes may be achieved without discarding strong norms of precedent and judicial review. "There is no reason to think that Congress wanted to short-circuit th[e] ordinary system of judicial review for the many agencies and multiplicity of agency orders encompassed by the Hobbs Act. And there is certainly no basis to interpret a *silent* statute as achieving that extraordinary close-the-courthouse-door outcome." *PDR Network*, 139 S. Ct. at 2066 (Kavanaugh, J., concurring in the judgment).

The court overstates the concern that failing to afford the D.C. Circuit decision universal authority would undermine efficiency. The operative statutes already promote efficiency without overturning the normal rules of intercircuit stare decisis and judicial review. The consolidation mechanism efficiently adjudicates the claims of the specific parties by permitting one judicial proceeding rather than requiring multiple parallel proceedings. The Hobbs Act's sixty-day

---

were appealable to the Supreme Court as of right. This practice burdened the Supreme Court with the obligation "to review many cases where the questions involved were of minor importance." *Providing for the Review of Orders of Certain Agencies, and Incorporating into the Judicial Code Certain Statutes Relating to Three-Judge District Courts: Hearing on H.R. 1468, H.R. 1470, and H.R. 2271 Before Subcomm. No. 3 and Subcomm. No. 4 of the H. Comm. On the Judiciary*, 80th Cong. 27 (1947) (statement of Hon. Orie L. Phillips, Senior Circuit Judge). The Hobbs Act removed the appeal as of right to the Supreme Court but, in exchange, granted access to the circuit courts "to preserve the judicial system's traditional process." Sigalos, *supra*, at 1104 (internal quotation marks omitted).

[8] S. REP. NO. 85-2129 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3996, 3997; *see also* H.R. REP. NO. 85-842, at 6; *Montship Lines, Ltd. v. Fed. Mar. Bd.*, 295 F.2d 147, 150 (D.C. Cir. 1961).

period for bringing pre-enforcement challenges promotes efficiency by narrowing the time during which the agency must engage in pre-enforcement litigation. *See* 28 U.S.C. § 2344. Both mechanisms promote efficiency without treating the consolidating court's decision as universally binding beyond the parties and the circuit. For these reasons, the structures of the Hobbs Act and § 2112 do not clearly indicate that Congress intended to authorize one single proceeding to decide a legal question for all circuits and for non-parties and thereby to depart from well-settled judicial norms.

In practice, moreover, an agency will often respond to an adverse decision in a consolidated case by repealing or amending the relevant order. Such a decision from a court of appeals is a valid reason for repealing a rule or an order. The agency may say that it will acquiesce in the decision of the court of appeals, and because it does not want to enforce its order unevenly around the country, it is repealing the order altogether.

### III

The problem is that the FCC did not provide such a rationale in its order repealing the Solicited Fax Rule. Commenters told the FCC that the D.C. Circuit's decision was not universally binding and that the agency had some discretion in deciding how it would respond to that decision. The FCC could have responded to those comments by saying that even if the D.C. Circuit's decision is not universally binding, the agency does not think it would be desirable to continue to maintain an order that the D.C. Circuit has declared invalid and that it instead prefers to maintain a uniform national policy. But, as the court acknowledges, "[t]he FCC's Repeal Order does not purport to do away with the Solicited Fax Rule as a matter of policy." *Ante* at

7

10 n.2. Instead, the repeal order relied exclusively on the notion that the D.C. Circuit's decision was universally "binding on all other circuits" as the rationale for the repeal:

> [T]he Applicants argue that the Bureau was not required to vacate the Solicited Fax Rule, notwithstanding the decision of the D.C. Circuit Court. We disagree. … Because the Solicited Fax Rule could no longer be viewed as lawful after the court's pronouncement, the Bureau's order eliminating the rule was not a discretionary implementation of the court's mandate, which had issued on March 31, 2017. We also reject the Applicants' notion that the Commission is not required to "acquiesce" to the court's opinion. As numerous courts have held, the D.C. Circuit's decision is binding on all other circuits. The Commission is thus bound to comply with the D.C. Circuit's mandate.

Repeal Order, *supra* note 1, at 3083-84; *see also id.* at 3083 ("Because *Bais Yaakov* [*of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017)] struck down the Solicited Fax Rule, the Bureau acted properly in eliminating that rule and, indeed, had no discretion but to do so.").

The FCC's reasoning is incorrect. The D.C. Circuit's decision in *Bais Yaakov* is not "binding on all other circuits." *Id.* at 3084. It is binding as a matter of precedent within the D.C. Circuit, and the judgment binds the parties to the consolidated cases. But the decision lacks further binding force. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("Opinions 'bind' only within a vertical hierarchy."). The FCC erred when it said that the D.C. Circuit had the power to bind other circuits and that the agency's "order eliminating the rule was not a discretionary implementation of the court's mandate." Repeal Order, *supra* note 1, at 3083.

In fact, there is no reason to treat the D.C Circuit's decision in *Bais Yaakov* differently from any other decision in which a federal appellate court rules against the government. The D.C. Circuit's language describing the Solicited Fax Rule as "unlawful" does not bind our court any more than it would if it had appeared in an out-of-circuit decision reviewing an enforcement proceeding. Because the FCC erroneously described the applicable legal framework, I would grant the petition for review. *See Chenery I*, 318 U.S. at 94 ("[A]n order may not stand if the agency has misconceived the law."); *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998) ("An agency action, however permissible as an exercise of discretion, cannot be sustained where it is based not on the agency's own judgment but on an erroneous view of the law.") (internal quotation marks omitted).

## IV

It is no answer to say, as the court does, that "subsequent courts have nothing left to enforce" when a consolidating court "invalidates a rule on a facial challenge." *Ante* at 13 (emphasis omitted). The court thereby suggests that the D.C. Circuit somehow eliminated the Solicited Fax Rule when it decided *Bais Yaakov*. But the D.C. Circuit in that decision did not purport to apply anything other than normal standards of review under the Administrative Procedure Act ("APA"). Some courts have suggested that the APA's command to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2), authorizes

9

the universal invalidation of the agency action under review.[9] But that argument has nothing to do with a consolidation under § 2112, the provision that the court holds makes the difference here. It is also "a questionable interpretation of section 706, which is more naturally read not as a remedial provision but simply as an instruction to courts to disregard unlawful agency actions when deciding cases." *E. Bay Sanctuary Covenant*, 994 F.3d at 993 (Miller, J., dissenting in part); *see CASA de Md.*, 971 F.3d at 262 n.8 ("[T]he position that section 706 even authorizes, much less compels, nationwide injunctions is baseless.").[10]

The court believes that the Hobbs Act and § 2112 alter the effect of the D.C. Circuit's judgment, even though the D.C. Circuit did not purport to be departing from normal APA standards or to be

---

[9] *See, e.g.*, *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2021) ("Section 706(2) does not tell a circuit court to 'set aside' unlawful agency action only within the geographic boundaries of that circuit. Vacatur of an agency rule prevents its application to all those who would otherwise be subject to its operation."); *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 47-48 (D.D.C. 2020) ("[T]he APA's instruction that unlawful agency actions be 'set aside' is ordinarily read as an instruction to vacate, wherever applicable, unlawful agency rules.").

[10] *See also* Samuel Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 418, 438 n.121 (2017) ("National injunctions were not contemplated when the APA was enacted. … [W]hatever one's view of how much the APA codified or changed existing practice, it never speaks with the clarity required to displace the longstanding practice of plaintiff-protective injunctions."); John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 YALE J. ON REG. BULL. 37, 42 (2020) ("Section 706 does not tell courts to apply the remedy of setting aside agency action. It does not deal with remedial orders at all. When it says 'set aside,' it directs the court not to decide in accordance with the agency action.").

exercising special authorities. The court notes that the Hobbs Act confers on the consolidating court "exclusive jurisdiction to make and enter … a judgment determining the validity of, and enjoining, setting aside, or suspending, in whole or in part, the order of the agency." 28 U.S.C. § 2349(a); *see ante* at 14-15. Yet this language confers only jurisdiction, with relief to the parties authorized by other sources of law. *See Brotherhood of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 115 (D.C. Cir. 2020) ("While the Hobbs Act includes a general grant of jurisdiction, it is the Administrative Procedure Act that codifies the nature and attributes of judicial review.") (internal quotation marks and alteration omitted); *Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC*, 17 F.4th 88, 98 (11th Cir. 2021) ("Under the Hobbs Act, when we conduct our review, we apply the standards from the Administrative Procedure Act."). The Hobbs Act does not contain any language authorizing a consolidating court to go beyond providing relief to the parties before it and instead to issue a universally binding judgment.[11]

The court does not identify any law that empowered the D.C. Circuit to issue a judgment with greater binding force than those the D.C. Circuit issues in other cases.[12] And even if some law had

---

[11] A commentator on whom the court relies acknowledges—with respect to channeling statutes such as the Hobbs Act—that, "like the APA, these statutes do not expressly say that the reviewing court may 'set aside' a rule 'for everyone,' as opposed to just the parties challenging the rule or order." Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1176 (2020) (emphasis omitted).

[12] The court believes that the Hobbs Act and § 2112 confer this power by inference from the purposes of those statutes. *See ante* at 21. As noted above, the language of these statutes falls well short of the "clear[]" statement

11

empowered the D.C. Circuit "to annul regulations altogether," it would be "subject to the objection that it goes beyond vindicating the rights of the plaintiff." Harrison, *supra* note 10, at 41; *see also New York,* 140 S. Ct. at 600 (Gorsuch, J., concurring in the grant of stay) ("[W]hen a court … order[s] the government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies.").

Assuming nevertheless that the D.C. Circuit had the power to obliterate the Solicited Fax Rule, it never even purported to do so. *Bais Yaakov* did not involve a challenge to the 2006 Solicited Fax Rule but to a 2014 FCC order that "interpreted and applied that 2006 Rule." *Bais Yaakov*, 852 F.3d at 1079. The D.C. Circuit vacated only the 2014 order. In explaining its reasons for doing so, it concluded that the Solicited Fax Rule "is unlawful to the extent that it requires opt-out notices on solicited faxes." *Id.* at 1083. If that were enough to require other courts to regard the Solicited Fax Rule as invalid, it would mean that not only the judgment in the case but also the reasoning of its opinion was universally binding. That amounts to a new rule of intercircuit stare decisis.

In denying the petition for review, the court endorses such a rule. The FCC did not even say in its repeal order—in any clear way—that it was eliminating the Solicited Fax Rule because the rule had been vacated and was a nullity. The FCC said instead that the Solicited Fax Rule "could no longer be viewed as lawful" because "the D.C. Circuit's decision is binding on all other circuits." Repeal Order,

required of Congress to alter the rules governing judicial authority. *PDR Network*, 139 S. Ct. at 2062 (Kavanaugh, J., concurring in the judgment).

*supra* note 1, at 3083-84. Because the FCC based its repeal order on the erroneous conclusion that the Hobbs Act and § 2112 depart from the normal rules of intercircuit stare decisis and limitations on the judicial power, I would grant the petition for review and remand to the agency to provide an adequate justification for its order.

\* \* \*

Judgments in cases initiated under the Hobbs Act and consolidated pursuant to § 2112 bind only the parties to those cases and create precedent only in the circuit where the case is decided. The Hobbs Act provides no reason to overturn "our legal system's rejection of intercircuit stare decisis." Estreicher & Revesz, *supra*, at 736. Accordingly, I dissent.